## Smith, Hill & Co. v. Bruner & Strong.

1.   CONTRACTS—*Must be Performed in a Reasonable Time.*—A number of the citizens of a city signed an agreement to pay the owners of a coal shaft, in consideration of their sinking their shaft to what is known as the third vein of coal, fifty dollars for the first ton of coal delivered to

each of them from such vein. In a suit against one of the signers of the agreement, it was held that the work was to be prosecuted with reasonable diligence and completed within a reasonable time. and that the owners of the shaft had no right to abandon the work and then take it up again at a late date and insist on payment.

**Assumpsit,** on a subscription. Appeal from the Circuit Court of Livingston County; the Hon. THOMAS F. TIPTON, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

B. F. JONES, attorney for appellants.

A. C. NORTON, attorney for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a suit commenced by appellants against appellees in the Circuit Court of Livingston County, based on the following subscription:

" PONTIAC, ILL., April 14, 1893.

We, the undersigned, citizens of Pontiac, believing it is for the interest of our city to have a better grade of coal than can be had from the present vein, which is now being worked, agree to pay to Smith, Hill & Co., proprietors of the Pontiac Coal Shaft, in consideration of their sinking the present coal shaft to what is known as the third vein coal, fifty dollars for the first ton of coal delivered to us from the third vein coal.

(Signed)

BRUNER & STRONG,
and others."

This case was tried before a jury and resulted in a verdict for appellees, and judgment rendered against appellant for costs.

From such judgment this appeal is taken.

There is little dispute as to the evidence in the case, which is substantially as follows:

The appellants were the owners of a coal shaft in Pontiac, and had been working only the first vein of coal; and the quality of that coal not being very good, and because they

could not make any money, and there was a prospect of the shaft being closed, the citizens made up a subscription list in form of the one copied above and raised a considerable amount by the subscription, which was subsequently raised to $1,200. The subscription list was in the nature of an inducement held out by the citizens to induce the appellants to sink the coal shaft to the third vein, which was about 200 feet below the first vein of coal.

The appellants proceeded to sink the shaft, and sunk it about ninety feet, when they temporarily abandoned the work. On the 10th day of August, 1893, they leased the mine to John T. Henry to the first day of May, 1895, providing that in case the appellants decided to sink the shaft to third vein the lease was to terminate, but the sinking of the shaft was not to be done before May 1, 1894, nor should the work to sink such shaft be begun after July 1, 1894. On the 9th day of March, 1894, by a new agreement in writing between appellants and said Henry, the first lease was modified by providing that during the term of the first lease the appellants should not sink the shaft. This modification of the lease, however, had another provision by which the right to sell the coal shaft was reserved to the appellants, and the lease was to terminate sixty days from the date of the sale and upon notice.

By this lease and the modification, appellants put it out of their power to sink the shaft to the third vein until the 1st day of May, 1895, unless an opportunity should be offered to sell it before that time, which, in substance, was an indefinite postponement of the project.

On the 24th day of May, 1894, the appellants sold and deeded the coal shaft to one Richard Evans, without any provision in the deed requiring Evans to sink the coal shaft any deeper, but on the 21st of May, 1894, appellant took an agreement from Evans in consideration of the sale of the property to deliver to them on or before April 1, 1895, a sufficient quantity of the first coal mined and raised by him in the third vein of the said coal shaft to fill the agreement made by appellants with the citizens of Pontiac by the sub-

scription list recently signed and circulated by said citizens, and the said Evans was to pay to appellants the $1,250 so subscribed by said citizens which was recited in the agreement to be a part of the consideration to be paid by Evans to appellants for real estate described in three several deeds of said appellants to said land. It appears that along about the 1st day of April, 1895, about two years after the subscription list was signed, Evans succeeded in sinking the coal shaft to the third vein and delivered to the appellants the ton of coal which appellants were to deliver to appellees by the terms of the subscription and which the latter offered to appellees and claimed the amount subscribed in question. The latter refused to receive it or pay the subscription, hence this suit.

It will become necessary for this court to determine the real meaning of the contract contained in the subscription in question.

Was it a license given by the appellees to complete the sinking of the coal shaft any time in the future?

We think not, and especially where the appellants, as in this case, had abandoned the project of sinking the shaft to the third vein for an uncertain and indefinite period, depending upon the event of their finally selling the coal shaft and inducing some one else to sink the shaft.

We think that it was within the contemplation of the subscribers to the subscription list and the appellants that the work was to be prosecuted with reasonable diligence and completed within a reasonable time, and that the appellants, if they intended to get the benefits of the subscription, had no right to abandon the work and then take it up again at so late a date and insist on the payment of the subscription.

Some of the defendants' instructions may have been given on a wrong theory of the case, but under the evidence we think the verdict of the jury was the only one that could have been properly returned, as the subscription list required a diligent prosecution of the work of sinking the coal shaft by appellants without abandonment, and its completion

within a reasonable time, neither of which we think was done in this case. And under the circumstances the appellants can not be regarded as having expended their money in the completion of the coal shaft on the faith of the subscription, hence there was no consideration moving to the appellees.

The judgment of the court below is therefore affirmed.